IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAENA C.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>Defendant. | CIV. NO. 25-00265 JMS-KJM<br><br>ORDER REVERSING THE ALJ'S DECISION OF NO DISABILITY AND REMANDING FOR FURTHER PROCEEDINGS |

# ORDER REVERSING THE ALJ'S DECISION OF NO DISABILITY AND REMANDING FOR FURTHER PROCEEDINGS

## I. INTRODUCTION

Daena C. ("Claimant" or "Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security, Frank Bisignano ("Commissioner"). ECF No. 1 (Complaint for Review of Social Security Disability Insurance Determination). The Commissioner adopted the

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf [https://perma.cc/YLJ9-LBRF].

Administrative Law Judge's ("ALJ") August 10, 2024 written decision finding Claimant not disabled under § 216(i) and § 223(d) of the Social Security Act ("Decision"). Claimant argues that the ALJ committed legal error by (1) failing to provide specific, clear, and convincing reasons for discrediting her symptom testimony as to fibromyalgia, and (2) failing to properly evaluate medical opinions and prior administrative medical findings as to Claimant's fibromyalgia.

The court finds that the ALJ erred by improperly addressing Claimant's symptom testimony when assessing her residual functional capacity which was, consequently, not based on substantial evidence. Accordingly, the court REVERSES the Commissioner's final decision and REMANDS for further proceedings.

## II. BACKGROUND

### A. The Social Security Disability Determination Framework and the ALJ's Findings and Decision

On July 13, 2022, then-nearly 42-year-old Claimant applied for Title II Social Security Disability Insurance benefits, alleging the disability onset date as July 4, 2020. Administrative Record ("AR")[2] 17, 208. Her claim for Social Security Disability Benefits was denied initially on August 7, 2023, and the denial was affirmed on reconsideration on December 12, 2023. AR 80–93, 94–109.

---

[2] The Administrative Record ("AR") is numbered sequentially, located in the lower-right corner of each page of the AR, from pages 1 to 998 and is available at ECF No. 6-1.

Thus, the relevant period for purposes of this appeal is July 4, 2020, to December 31, 2025, the date Claimant was last insured. AR 17.

The Social Security Administration has established a five-step sequential analysis to assess disability,[3] which asks:

> (1) Has claimant been engaged in substantial gainful activity? If so, she is not disabled. If not, proceed to step two.
>
> (2) Has claimant's alleged impairment been sufficiently severe to limit her ability to work? If not, she is not disabled. If so, proceed to step three.
>
> (3) Does claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, she is disabled. If not, proceed to step four.
>
> (4) Does claimant possess the residual functional capacity ("RFC")[4] to perform her past relevant work? If so, she is not disabled. If not, proceed to step five.

---

[3] A claimant is "disabled" for purposes of the Social Security Act if (a) she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders her incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[4] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity [('RFC')]." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)). A claimant's RFC is "the most [Claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

> (5) Does claimant's RFC, when considered with her age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, she is not disabled. If not, she is disabled.

*See, e.g.*, *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled)); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations did not alter the familiar "five-step sequential evaluation process"). For steps 1 through 4, the burden of proof is on the claimant, and if the claimant reaches step 5, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step 1, the ALJ found that Claimant had not engaged in substantial gainful activity since July 4, 2020. AR 19 (citing 20 C.F.R. § 404.1571 et seq.).

At step 2, the ALJ found that Claimant had the following severe impairments: "cervical, thoracic, and lumbar spondylosis; obesity; migraine headaches; occipital neuralgia; chronic pain syndrome; fibromyalgia; anxiety; major depressive disorder; major neurocognitive disorder; panic disorder; and post-traumatic stress disorder (PTSD)." AR 20 (citing 20 C.F.R. § 404.1520(c)).

At step 3, the ALJ found that Claimant did not have a physical or a mental impairment or combination of impairments that met or was medically equal

to the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpart P, Appendix 1. AR 21 (citing 20 C.F.R § 404.1520(d), 404.1525, and 404.1526).

Between steps 3 and 4, the ALJ assessed Claimant's RFC and found that during the relevant period, Claimant could perform light work subject to limitations:[5]

> [Claimant] can lift 20 pounds occasionally; lift and carry 10 pounds frequently; stand and walk 6 out of 8 hours; sit 6 out of 8 hours; occasional climbing of ramps, stairs, balancing, and stooping; and can perform frequent reaching, handling, fingering, and feeling bilaterally. The claimant is precluded from: kneeling, crouching, and crawling as a job duty; from working with ladders, ropes, or scaffolds, unprotected heights, or hazardous moving machinery; from work with exposure to atmospheric conditions as defined in the Dictionary of Occupational Titles (DOT)/Selected Characteristics of Occupations (SCO); and from work involving more than occasional exposure to dust, fumes, odors, and pulmonary irritants. The claimant can understand, remember, and carry out simple work.

AR 23–24.

---

[5] The regulations define "light work" as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . .

20 C.F.R. § 404.1567(b).

At step 4, the ALJ determined that Claimant was unable to perform past relevant work in medical billing and as a level-of-care specialist. AR 32, 49 (citing 20 C.F.R. § 404.1565 (work experience as a vocational factor)).

At step 5, the ALJ found that given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. AR 33 (citing 20 C.F.R. § 404.1569, 404.1569a). At the administrative hearing, the vocational expert testified that, given Claimant's limitations, she would be able to perform the requirements of occupations involving "unskilled" "light exertion," such as "Cashier II," sales attendant, and cafeteria attendant. AR 33. Accordingly, the ALJ found Claimant not disabled. AR 34.

**B. Procedural Background**

On August 10, 2024, the ALJ issued her Decision finding Claimant not disabled from July 4, 2020, through August 10, 2024. AR 34. This denial became final when the Appeals Council denied Claimant's request for review on April 23, 2025. AR 1–6. Claimant brought this action for judicial review on June 26, 2025. ECF No. 1.

Claimant filed her Opening Brief and Concise Statement of Facts on September 22, 2025. ECF Nos. 9 & 10. The Commissioner filed an Answering

Brief and Concise Statement of Facts on November 21, 2025.[6] ECF Nos. 16 & 17. Claimant filed her Reply Brief and Concise Statement of Facts on December 15, 2025. ECF Nos. 18 & 19. The court heard oral argument on August 13, 2026.

## III. STANDARDS OF REVIEW

### A. General Standard

Congress has provided a limited scope for judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'") (citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id*. (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to

[6] In the interim (October 3, 2025, to November 6, 2025), the matter was stayed due to a federal government shutdown. *See* ECF Nos. 12, 14.

deny benefits 'only if [the ALJ's findings are] not supported by substantial evidence or [are] based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks and citation omitted).

To determine whether there is substantial evidence, courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted). If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed, *id.* at 1010 (citations omitted), because the court "may not substitute its judgment for that of the ALJ," *Matney ex rel. Matney*, 981 F.2d at 1019. "Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Gutierrez*, 740 F.3d at 523.

And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. An error

is harmless if it is "inconsequential to the ultimate nondisability determination" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id*. (quoting *Treichler*, 775 F.3d at 1099).

## B. Standard for Symptom Testimony

"To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024); *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 759 F.3d at 1014 (internal quotation marks omitted)). "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Smith*, 14 F.4th at 1111 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Next, if the claimant meets the first step, an ALJ can "'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison*, 759 F.3d at 1014–15); *see also Lingenfelter*,

504 F.3d at 1035–38 (noting that to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony). "[A]n ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Smartt*, 53 F.4th at 494 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). The heightened standard does not apply when there is affirmative evidence of malingering. *Id.* at 497. In other words, absent affirmative evidence of malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting a claimant's subjective complaints. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted); *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1160 (9th Cir. 2008) (noting the clear-and-convincing-reasons standard does not apply upon affirmative evidence that the claimant is malingering).

As to credibility, "[g]eneral findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ "must identify the specific testimony that [she] discredited and explain the evidence undermining it." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be

credible and must explain what evidence undermines the testimony.") (citation omitted); *cf. Johns v. Berryhill,* 2019 WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and remanding Commissioner's decision because ALJ failed to properly "specifically identify" and discuss claimant's pain and symptom testimony in rejecting her testimony and finding her not disabled); *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (noting that to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief" and, if the ALJ did not find "affirmative evidence" of malingering, "reasons for rejecting claimant's testimony must be clear and convincing") (citation and internal quotation marks omitted). In addition,

> it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017 (citations omitted).

### C. Standard for Daily Activities

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent

with doing more than merely resting in bed all day." *Id.* at 1016 (citing cases). Furthermore, recognizing that "'disability claimants should not be penalized for attempting to lead' their 'lives in the face of their limitations,'" the Ninth Circuit has "provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony." *Auapaau v. O'Malley*, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (quoting *Reddick*, 157 F.3d at 722). Accordingly, "daily activities may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferable to a work setting." *Id.* (citing *Orn*, 495 F.3d at 639).

## IV. DISCUSSION

Claimant asserts that the ALJ (1) improperly rejected Claimant's testimony regarding her fibromyalgia symptoms, and (2) failed to consider the past administrative medical findings and medical opinions considering her fibromyalgia. *See generally* ECF No. 9. Because it is dispositive as the basis for remand, the court addresses only the ALJ's adverse credibility finding as to Claimant's testimony about the intensity, persistence, and limiting effects of her fibromyalgia. To begin, the court addresses fibromyalgia as a valid basis for finding disability. The court then reviews and analyzes Claimant's symptoms and

medical record to explain how the ALJ improperly discredited Claimant based on a misunderstanding of fibromyalgia and authority on its symptom evaluation.

**A. The Unique Characteristics of Fibromyalgia**

Before the court is "a recurrent problem": The ALJ's failure to consider fibromyalgia's "unique symptoms and diagnostic methods"—as described in both *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004),[7] and Social Security Ruling ("SSR")[8] 12-2p—in discrediting a claimant's symptom testimony. *See Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Such failure constitutes legal error. *Id.*

*Benecke* described fibromyalgia as a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." 379 F.3d at 589. "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id.* at 589–90. Fibromyalgia has historically been

---

[7] The sole issue in *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), was whether the district court abused its discretion by remanding for further proceedings rather than for an award of benefits. 379 F.3d at 590, 593. *Benecke* is instructive, however, in showing that the ALJ erred in discrediting the claimant's testimony about the severity of her symptoms based on his misunderstanding of fibromyalgia.

[8] "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted).

regarded with skepticism because its "cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id*. at 590; *see also id*. at 594 n.3 (ALJ expressing skepticism at the administrative hearing that fibromyalgia involves "nothing physical that [doctors] can find").

In 2012, the Social Security Administration ("SSA") provided guidance in SSR 12-2p, 2012 WL 3104869 (S.S.A. July 25, 2012) (Evaluation of Fibromyalgia). *See Revels*, 874 F.3d at 656 (describing the occurrence of a "sea-change" with SSR 12-2p recognizing fibromyalgia as a valid "basis for a finding of disability"). SSR 12-2p recognizes that a person can have a medically determinable impairment of fibromyalgia and establishes how the SSA evaluates fibromyalgia in disability claims.

Crucially, SSR 12-2p instructs that in assessing the RFC of a person with fibromyalgia, the SSA "consider[s] a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" 2012 WL 3104869, at *6. And "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p and *Benecke*." *Revels*, 874 F.3d at 662.

### B. Claimant's Testimony

Claimant's symptoms are typical of those who suffer from fibromyalgia:

- pain is "everywhere";
- "pinching shoulder pain shooting down to . . . arms, wrists, and hands which are numb";
- "knots and pain in . . . rib cage, cervical spine all the way down, spine to feet";
- "in every joint including between . . . fingers";
- "every step . . . feet are bruised";
- "the impact on . . . joints causes all . . . to be in flames"' and walking only "10–20 feet before taking a break";
- "pain requires frequent changes in positioning"; and
- "carpal tunnel on both wrists" and using wrists for "20–30 minutes before cramping and burning begins."

AR 24–25. Additional difficulties due to fibromyalgia include:

- Sleep disturbances such that "when she wakes, she forces herself to get out of bed and is tired."[9]
- Fatigue, which renders activities such as cooking a meal and taking a shower "a huge task" and needing "to rest afterwards."

[9] *See Benecke*, 379 F.3d at 589–90 (describing fibromyalgia symptoms to include a "pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease").

- Challenges "lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands."

AR 24; *see also* AR 294 (Function Report - Adult).[10]

**C. Analysis**

At the first step of the two-step credibility framework, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to result in symptoms." AR 24.

At the second step, the ALJ rejected Claimant's testimony regarding the intensity, persistence, and limiting effects of fibromyalgia as "not entirely consistent with the medical evidence and other evidence in the record." AR 24. Because the ALJ did not find or cite any affirmative evidence of malingering, she was required to provide specific, clear, and convincing reasons for rejecting Claimant's testimony. This the ALJ did not do.

The Ninth Circuit has held that

[10] Claimant also testified as to the "somatic symptoms" of fibromyalgia, *see* SSR 12-2p, 2012 WL 3104869, at *3 n.9, which include irritable bowel syndrome ("IBS") and migraine headaches. The ALJ found Claimant's IBS to be non-severe, AR 20, and as for migraine headaches, the ALJ found no demonstration in the record of limitations greater than those assessed with the RFC. AR 26. In addition, Claimant testified as to her mental limitations, such as memory problems, brain fog, anxiety, depression, frustration, difficulty getting along with others. The psychological consultative examiner correspondingly diagnosed Claimant with "major cognitive disorder, probably due to fibromyalgia" and "anxiety associated with fibromyalgia." AR 28. The ALJ, however, found no "substantial evidence of specialized mental/behavioral health treatment . . . nor other treatment to support greater mental limitations." AR 28. Claimant does not challenge these findings on appeal.

> an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of . . . her [RFC] determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter*, 806 F.3d at 489. Accordingly, "'[g]eneral findings'" are not enough to satisfy the requirement to provide specific, clear, and convincing reasons. *Id*. at 493. "'[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id*. Failure to do so constitutes legal error. *Id*. at 494. The Commissioner asserts that the ALJ "discounted Plaintiff's claims because her activities contradicted her allegations of disabling impairments." ECF No. 16 at PageID.1062. The Commissioner also argues that the "ALJ's reasons are . . . legally sound." *Id*. The court disagrees.

At the outset, neither the ALJ nor the Commissioner mentions the fluctuating nature of fibromyalgia.[11] The ALJ, consequently, failed to analyze Claimant's activities and symptom testimony in accordance with SSR 12-2p and

[11] Nor does the Commissioner recognize the requirement for "specific, clear, and convincing reasons" for an ALJ to reject a claimant's testimony about the severity of her symptoms, *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014), stating only that the ALJ's "rationale is clear enough that it has the power to convince," *id*. at 499. ECF No. 16 at PageID.1062.

*Benecke*. In addition, the ALJ failed to show how Claimant's daily activities "involv[e] the performance of physical functions that are transferable to a work setting" or that Claimant spent a "substantial part" of her day engaging in such pursuits. *Orn*, 495 F.3d at 639. And the Social Security Act does not require claimants to be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (recognizing that "a claimant need not vegetate in a dark room in order to be eligible for benefits") (internal quotations and citation omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Instead, the ALJ focused on Claimant's "wide ranging activities, performed largely independently and without caregiver assistance." AR 25. These activities included:

- caring for her 22-pound toddler with "basic care and diapering";
- driving her 12-year-old daughter "to and from school a couple of times a week" and otherwise homeschooling her "part of the week involving guiding virtual schoolwork at home";
- "spending time with family, mostly on holidays and birthdays";

- "prepar[ing] her own meals, fold[ing] laundry" and attempting to "tidy up if she has more energy";
- "driv[ing] . . . trips less than 30 minutes each way, [shopping] online and [] curbside pick up";
- "swim[ming] twice a month" at "the Kroc Center for swimming therapies";
- "crochet[ing] until she has pain and has to stop"
- attending doctors' appointments on a regular basis.

AR 25. But the ALJ overlooked portions of Claimant's testimony that provided additional context, such as her daughter attending "a specific school" requiring Claimant to drive her only "twice a week because it would be too hard for [Claimant] to get her there every day. So three days a week, she's homeschooled." AR 65. Also, Claimant cannot allow her toddler to "climb up [her]," stating that she must "redirect him and make sure that he knows he can hold my hand, but I can't necessarily carry him any distance. I can lift him up to give him a hug or to sit on my lap, but I can't carry him from across the room." AR 66–67.

The ALJ also disregarded Claimant's testimony about flare-ups. Claimant testified that "[h]aving to go to a birthday party is even harder, like just being around people, having to physically be there." Claimant must plan her days and tries not to "leave the house unless [she] has to" because after such events, she is "in a flare-up," in pain, and not "able to go anywhere and do anything for the next couple of days afterwards." AR 65. Such flare-ups last from one day to one

and a half weeks, and occur "[p]retty frequent, depending on [the] activity." AR 65.

Given Claimant's testimony demonstrating the waxing-and-waning nature of fibromyalgia, Claimant's activities are not inconsistent with her symptom testimony; for example:

- Claimant can comfortably use her hands "probably 20, 30 minutes before [they] start cramping, before [they] start[] burning" and "it takes a long time just to complete something just because . . . using [her] hands hurt." AR 68.

- Cooking a meal and taking a shower causes fatigue and are "a huge task" requiring Claimant "to rest afterwards." AR 24.

- It is hard for Claimant to go to the store, to a birthday party, or to be around people and that "if she pushes herself, she has to rest for a day to a week and a half, depending on the activity." AR 24.

- "[I]f she does go somewhere, she does not go anywhere several days afterwards." AR 24.

The ALJ omitted additional evidence showing the extent Claimant relies on help from friends and family with daily activities:

- They "help with children when possible. Rides to/from school. Help w/ baby, help w/ meals & cleaning. I have someone who [cuts] my grass & help with chores, meal prep. Help with transportation during procedures every couple months." AR 290.

- "[Claimant] also needs assistance from her 12 y.o. daughter with caring for their home and her toddler." AR 875.

- "[Daughter] basically helps watch [the toddler] because I cannot run after him . . . my daughter is a big help." AR 66

- Daughter helps detangle and brush Claimant's hair and apply lotion to her feet and legs. AR 290.

- "Usually I need my daughter or someone to help me or accompany me [to go places]." AR 293.

- "When I get up my daughter makes coffee & breakfast. The baby and I spend pretty much the rest of our day in the large playpen where I can rest while he can nurse throughout the day." AR 290

The ALJ failed to recognize that the waxing and waning attribute of fibromyalgia would allow Claimant a certain level of minimal activity followed by incapacitation and extensive recovery. The ALJ failed to link specific, clear, and convincing reasons to specific evidence that undermined Claimant's testimony.

Additional evidence that the ALJ improperly discredited include, for example, that Claimant stopped working because of a group lay-off and not due to her functional limitations, and that she improved with treatment. The ALJ stated that Claimant stopped work for two reasons—one, she "was fighting to continue accommodation to work from home," and two, there was a "huge group lay off," which included Claimant. AR 25. The latter reason, the ALJ noted, "is unrelated to the claimant's functional limitations." The Commissioner similarly asserts that the fact Claimant stopped work for reasons other than her impairments is a sufficient basis to discount her testimony. ECF No. 16 at PageID.1064 (citing *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001)). But "the ALJ cannot cherry pick the evidence which supports her finding

while ignoring other contradictory evidence." *Fidel R.P. v. O'Malley*, 754 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (citing *Ghanim*, 763 F.3d at 1164).

The record shows that prior to being laid off, Claimant had accommodations in place and "it was right around the time where [her] body wasn't working very well anyway." AR 47. The work-from-home accommodations addressed issues related to Claimant's fibromyalgia: "sitting in one position"; "having to change positions frequently"; "having to use the restroom frequently" due to irritable bowel syndrome; and because "just getting up and walking, driving [to work] sometimes would be . . . hard to do." AR 50. These reasons for accepting the group layoff are not unrelated to Claimant's functional limitations. The ALJ thus erred in failing to cite specific, clear, and convincing reasons to discredit Claimant's allegations as to why she stopped work.

As for improvement with "a history of pain management treatment," AR 26, the ALJ cited a September 11, 2023 treatment note where Claimant "report[ed] significant improvement in pain, including 80% relief of axial pain and near complete resolution of radiating leg pain, and greater than 50% reduction in the intensity, frequency, and duration of headaches with Botox injections." AR 26. And "as a result, [Claimant] is able to care for her children and maintain light activity." *Id.* The ALJ then concluded that the RFC "reflects the most restrictive exertional level of work available, which comports with the diagnosis of migraines,

and the associated degree of limitation consistent with that stated in the medical treatment records." *Id.* Even considering the longitudinal record of pain management treatment during the relevant period (March 2021 to April 2024) this conclusion is flawed because the ALJ fails to cite the rest of that September 11, 2023 treatment note that shows Claimant's inability to work despite treatment:

> The patient is still unable to work due to her pain and constitutional symptoms due to fibromyalgia. She has been out-of-work for 3 years. She also needs assistance from her 12 y.o. daughter with caring for their home and her toddler. Due to her pain, she is unable to remain in one position for greater than 1 hour and she frequently has to move in bed, sit-to-stand, and stand-to-sit.

AR 843. The ALJ improperly omitted this non-contradictory medical evidence, which accounts for the nature of intermittent fibromyalgia symptoms as noted in SSR 12-2p, 2012 WL 3104869, at *6, and the Commissioner failed to address it.

Claimant's symptom testimony pertaining to fibromyalgia and its waxing and waning attribute is not inconsistent with Claimant's ability to engage in certain daily activities that result in periods of incapacity. The ALJ was required to explain how this undermines Claimant's credibility with specific, clear, and convincing reasons. The ALJ failed to do so, constituting legal error.[12] *See Brown-Hunter*, 806 F.3d at 494.

---

[12] Moreover, the ALJ's error is not harmless because it was consequential to the non-disability determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The assessed RFC that Claimant was capable of light work, including "frequent reaching, handling,

(continued . . . )

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS this action to the ALJ for further proceedings consistent with this Order. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 19, 2026.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

fingering, and feeling bilaterally," AR 23, did not reflect the consequences of Claimant using her hands for 20–30 minutes before they would start cramping and burning, AR 24–25. Nor does the RFC for light work, which "requires a good deal of walking or standing," 20 C.F.R. § 404.1567(b), consider Claimant's limited ability to walk 10–20 feet before taking a break, or the need for frequent changes in positioning. Even the vocational expert testified that no work would be available for Claimant if she needed one hour of unscheduled breaks during the workday *or* needed to transition between sitting and standing every 20 minutes. AR 75–76. It is clear, therefore, the ALJ failed to assess the RFC "in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p and *Benecke*." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).